# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE ROGERS, | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:18-cv-1809 (JCH) |
| v. | : | |
| | : | |
| STEPHEN FAUCHER, et al. | : | MARCH 7, 2019 |
| Defendants. | : | |

## RULING RE: MOTION TO AMEND COMPLAINT (Doc. No. 10)

On November 2, 2018, the plaintiff, Wayne Rogers ("Rogers"), an inmate

currently confined at the Corrigan-Radgowski Correctional Center ("CRCI") in

Uncasville, Connecticut, filed a complaint pro se pursuant to title 42, section 1983 of the

United States Code against five Connecticut Department of Correction ("DOC")

employees in their individual and official capacities:  Warden Stephen Faucher, Deputy

Warden Sharonda Carlos, Lieutenant Jon Ballaro, Lieutenant Kelly, and Correction

Officer Bowers.  Compl. (Doc. No. 1).  Thereafter, on November 14, 2018, Rogers

moved to amend his complaint to add one more defendant:  Deputy Warden Ronald

Cotta.  Mot. to Amend Compl. (Doc. No. 7); Am. Compl. (Doc. No. 7-1) at 4.  Rogers

claimed that the six defendants violated his Eighth Amendment protection against cruel

and unusual punishment and his Fourteenth Amendment right to due process by

denying him a shower for five days, access to video surveillance footage, and protective

custody.  Am. Compl. at 9.  He sought damages and injunctive relief.  Id. at 10.

On January 2, 2019, this court dismissed with prejudice the Amended Complaint

for failure to state a claim under either the Eighth or Fourteenth Amendments.  Ruling

Re: Mot. to Amend Compl. and Initial Review Order ("IRO") (Doc. No. 9) 6-9, 13. The court also ruled that, even if Rogers had stated a plausible constitutional claim, the Amended Complaint was subject to dismissal for failure to exhaust administrative remedies. Id. at 10-12.

On January 9, 2019, Rogers filed the instant motion to file a second amended complaint restating his claims under the Fifth and Fourteenth Amendments to the United States Constitution because, at the time of the alleged violation, he was a pretrial detainee and not a convicted prisoner. Mot. for Leave to File Second Am. Compl. ("Mot. to Amend") (Doc. No. 10). He attached a proposed second amended complaint, which alleges the same facts as the previous complaints, but restates his claims under the Fifth and Fourteenth Amendments rather than the Eighth Amendment. See id. at 10-11. Because the court dismissed the Amended Complaint with prejudice, the court will construe the instant Motion as a motion to reopen the case. Despite the restatement of the claims, however, the case should remain dismissed.

## I.      STANDARD OF REVIEW

Pursuant to title 28 section 1915A of the United States Code, this court must review prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).

2

Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face."  Bell Atlantic, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se

complaints 'must be construed liberally and interpreted to raise the strongest arguments

that they suggest.'"  Sykes v. Bank of America, 723 F.3d 399, 403 (2d Cir. 2013)

(quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II.    FACTUAL ALLEGATIONS

The facts from the Amended Complaint (Doc. No. 7-1) and the proposed Second

Amended Complaint (Doc. No. 10) appear identical.  Thus, the court incorporates the

allegations as stated in its initial review order:

> On October 13, 2018, a fight broke out in the E-Pod housing unit at CRCI causing the unit to be locked down.  Am. Compl. at ¶ 1.  Normal operations in the E-Pod unit permit only twelve cells to be opened at one time for recreation, and there are four separate recreation periods.  Id. at ¶ 2.  The fight occurred during the second recreation period.  Id. at ¶ 3.  Rogers is scheduled for the third recreation period, but his period was cancelled because of the fight, even though the threat had been eliminated.  Id.  As a result, Rogers was not permitted to take a shower.  Id. at ¶ 4.  The last shower he had taken before the cancellation of the recreation period was on October 12, 2018, at approximately 1:30 p.m.  Id.
>
> Between October 12 and October 15, no out-of-cell movement was permitted, and Rogers was, therefore, unable to take a shower.  Id. at ¶ 5. He asked CRCI staff about whether he could shower but was told the decision to forbid out-of-cell movement came from supervisors.  Id. at ¶ 6. Rogers also wrote requests to Lieutenant Kelly, Deputy Warden Carlos, and Warden Faucher about being denied a shower, but he did not receive any response.  Id. at ¶¶ 7-8.
>
> On October 17, Rogers spoke with Lieutenant Ballaro about being denied a shower, explaining that he had not been able to shower in over 72 hours. Id. at ¶ 10.  Ballaro dismissed his complaint, stating that "gang members [were not] human; [they] were pieces of shit and get no rights."  Id.  Rogers wrote a second request to Kelly, Carlos, and Faucher but received no

response.  Id. at ¶ 11.  A staff member told him that they were busy.  Id. Rogers then filed a grievance to attempt to resolve the situation, but the grievance was returned without disposition for failure to file an Inmate Request.  Id. at ¶ 12; Rogers' Ex. C (Doc. No. 7-1 at 14-15).

At around 8:00 p.m. on October 17, Rogers was permitted to shower after waiting for 124 hours (five days and four hours).  Am. Compl. at ¶ 14.  The next day, he was removed from the E-Pod unit and temporarily placed in a restrictive housing unit ("RHU") for safety reasons.  Id. at ¶ 15.

On October 22, Rogers was removed from the RHU to "complete his [protective custody] package" and was brought to Lieutenant Kelly's office. Id. at ¶ 16.  Rogers asked Kelly why he had not responded to his written requests regarding the shower issue.  Id.  Kelly told him that he would not get a response and that he should "drop the issue [because] it is what it is." Id.  Rogers asked Kelly to elaborate, but Kelly told him, "If you want this [protective custody placement], you'll drop it."  Id.  Rogers did not inquire further about the issue.  Id. at ¶ 17.

On October 23, Rogers spoke with Warden Faucher and asked him why he had not responded to his written requests.  Id. at ¶ 18.  Faucher told Rogers that "he makes the rules and that's that" and instructed him to "drop the issue or [his] [protective custody placement] would be denied."  Id.

On October 25, Rogers wrote to Officer Bowers, the Freedom of Information Liaison for CRCI, and requested that he preserve the video surveillance footage and log book entries from October 13 to October 17, 2018.  Id. at ¶ 19; Rogers' Ex. D (Doc. No. 7-1 at 17).  Bowers denied the request because it was overly broad and involved too many hours of footage for preservation. Rogers' Ex. D.  Bowers informed Rogers that he may resubmit his request with more specificity as to what he seeks to preserve.  Id.  Bowers could not provide the requested log book entries because the disclosure of such documents is prohibited by section 1-210(b)(18)(G) of the Connecticut General Statutes.[1]  Id.  Rogers believes the denials were an attempt to "withhold and destroy evidence."  Am. Compl. at ¶ 19.

---

[1] Section 1-210(b)(18)(G) of the Connecticut General Statutes provides:

Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . [r]ecords, the disclosure of which the Commissioner of Correction . . . has reasonable grounds to believe may result in a safety risk, including the risk of harm to any person or the risk of an escape from, or a disorder in, a correctional institution or facility under the supervision of the [DOC] . . . . Such records shall include, but are not limited to . . . [l]ogs or other documents that contain information on the movement or assignment of inmates or staff at correctional institutions or facilities . . . .

Since the denial of the showers, Rogers has written to the medical unit at CRCI three times with concerns of about constant burning and itching on his feet and in his genital area, which he attributes to the inability to shower. Id. at ¶ 20; Rogers' Exs. E and F (Doc No. 7-1 at 18-19). As of October 30, 2018, Rogers has not been evaluated by medical staff. Am. Compl. at ¶ 20. Rogers believes that the medical unit is purposely delaying his appointment until after his condition heals. Id. at ¶ 21.

On October 30, 2018, Rogers spoke with Carlos and Faucher again about the denial of the showers. Id. at ¶ 22. One of the defendants told him, "[I]t is what it is and it's over now. I suggest you drop it if you know what's good for you! We run this jail, not you!" Id. Rogers interpreted the response as a threat. Id. at ¶ 23.

On November 5, 2018, Rogers was escorted out of his cell to meet with Lieutenant Kelly. Id. at ¶ 24. Kelly told Rogers that his "[protective custody] package was a go and [that] it would be sent to . . . Deputy Warden Cotta for approval . . . ." Id. On November 13, 2018, Cotta performed a tour of Rogers' housing unit. Id. at ¶ 26. When Rogers inquired about his "[protective custody] package," Cotta told him that he "wasn't going anywhere. [I]n fact, [he] would stay here and get [his] ass whipped in B-Pod." Id. Shortly thereafter, other correction officers came to Rogers' cell and told him that he was being transferred to the B-Pod unit, but Rogers refused to leave. Id. at ¶¶ 27-28. As a result, Rogers was issued a disciplinary report for refusing housing. Id. at ¶ 28; Rogers' Ex. H (Doc. No. 7-1 at 22).

IRO at 2-6.

## III.    ANALYSIS

In his Amended Complaint, Rogers claimed that the denial of his ability to shower

from October 12 to October 17, 2018 constituted cruel and unusual punishment under

the Eighth Amendment. Am. Compl. at 9. He also claimed that Bowers' "attempts to

tamper with . . . and destroy evidence" by denying him access to surveillance footage

and log book entries violated his right to procedural due process under the Fourteenth

Amendment. Id. Finally, he claimed that "Cotta's denial of protective custody . . .

knowing the serious threat and past injuries sustained due to past and present threats

constitutes deliberate indifference to safety, and the threat of bodily harm constitutes cruel [and] unusual punishment under the Eighth Amendment . . . ." Id.

In his Second Amended Complaint, Rogers clarifies that, at the time of the alleged violations, he was a pretrial detainee. Mot. to Amend at 1. He now claims that the denial of showers and protective custody violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Id. at 10. His Fourteenth Amendment claim regarding the denial of access to surveillance footage and log book entries appears unchanged. See id. Thus, the Fourteenth Amendment procedural due process claim remains dismissed.

Furthermore, Rogers still has not shown that he properly exhausted his administrative remedies before commencing this action. As stated in the Initial Review Order, Rogers filed his first Inmate Request regarding the denial of showers during the lockdown period, just two days before filing his administrative grievance and less than three weeks before filing his Complaint in this case. See IRO at 11-12. DOC Administrative Directive 9.6 requires that an inmate give officials fifteen business days to respond to an Inmate Request before filing a grievance. See id. at 12 (citing Shehan v. Erfe, No. 3:15-CV-1315 (MPS), 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017)). Thus, it is clear from the face of the Complaint, Amended Complaint, and Second Amended Complaint that Rogers did not properly exhaust his administrative remedies before commencing suit.

Moreover, even if Rogers had properly exhausted his administrative remedies, his Second Amended Complaint fails to state a claim upon which relief may be granted.

6

To begin, Rogers cannot assert a claim under the Fifth Amendment because (1) the

Fifth Amendment applies to the federal government, not to the states, see Dusenberry

v. United States, 534 U.S. 161, 167 (2002); and (2) Rogers is not suing any federal

government officials.  Therefore, the only question this court must resolve for purposes

of this ruling is whether Rogers can plausibly state a Fourteenth Amendment due

process claim based on the denial of showers and protective custody in October 2018.

"Conditions of confinement claims of pretrial detainees 'are governed by the Due

Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual

Punishments Clause of the Eighth Amendment . . . because [p]retrial detainees have

not been convicted of a crime and thus may not be punished in any manner – neither

cruelly and unusually nor otherwise.'"  Sadowski v. Dyer, No. 3:18-CV-1074 (KAD),

2018 WL 4854626, at *4 (D. Conn. Oct. 5, 2018) (quoting Darnell v. Pineiro, 849 F.3d

17, 29 (2d Cir. 2017)).  The detainee may state a section 1983 claim for unconstitutional

conditions of confinement by showing that the officials "acted with deliberate

indifference to the challenged conditions."  Id. (quoting Darnell, 849 F.3d at 29).  This

showing consists of both an objective and subjective prong.  Id.

Objectively, the pretrial detainee must allege that the challenged conditions were

"sufficiently serious" – that is they "pose[d] an unreasonable risk of serious damage to

his health . . . ."  Id. (quoting Darnell, 849 F.3d at 30).  Significantly, the standard for

establishing the objective prong of a deliberate indifference claim is the same

regardless of whether the claim is brought by a pretrial detainee under the Fourteenth

Amendment or by a convicted prisoner under the Eighth Amendment.  See Darnell, 849

at 30 ("Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health[.]") (internal quotation marks omitted); Molina v. Cty. of Westchester, No. 16 CV 3421 (VB), 2017 WL 1609021, at *2 (S.D.N.Y. Apr. 28, 2017) ("With respect to the first prong, the standard is the same whether the claim is brought by a convicted prisoner or a pretrial detainee[.]").

However, the legal standards for the subjective prong are different for convicted prisoners and pretrial detainees. To bring a claim under the Eighth Amendment, a convicted prisoner must allege that a defendant "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). Thus, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). In contrast, to satisfy the subjective prong of a deliberate indifference claim brought pursuant to the Fourteenth Amendment, a pretrial detainee need only allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35.

In the Initial Review Order on Rogers's Amended Complaint, this court dismissed Rogers's Eighth Amendment claims for denial of showers and protective custody on the

8

grounds that Rogers failed to allege a sufficiently serious deprivation, meaning that he failed to satisfy the objective prong of a deliberate indifference claim. See IRO at 7–9. Thus, notwithstanding the fact that Rogers's Second Amended Complaint now asserts these claims under the Fourteenth Amendment, as opposed to the Eighth Amendment, the claims fail on the same grounds because the standard for the objective prong is the same for claims brought under the Eighth Amendment and the Fourteenth Amendment.

In particular, courts in this Circuit have rejected claims based on even longer periods without the ability to shower because such claims do not show a "sufficiently serious" deprivation. See Crichlow v. Fischer, No. 9:17-CV-00194 (TJM/TWD), 2017 WL 6466556, at *15 (N.D.N.Y. Sept. 5, 2017) ("the denial of showers for as long as two weeks is not sufficiently serious to state a constitutional claim"); Cruz v. Jackson, No. 94-CIV-2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (prisoner's allegation that he was deprived of shower for two weeks does not satisfy objective component of Eighth Amendment claim). Likewise, Rogers has not alleged that the denial of protective custody exposed him to any unsafe conditions or deprived him of any basic life necessities. See IRO at 8–9. Thus, because the court concludes that Rogers has failed to allege a sufficiently serious deprivation, his constitutional claim regarding the denial of showers and his constitutional claim regarding the denial of protective custody remain dismissed.

**ORDER**

Rogers' Motion to Amend his Complaint (Doc. No. 10) is DENIED. The case remains dismissed. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 7th day of March 2019 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge